[Cite as *In re Z.D.*, 2020-Ohio-234.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| IN RE: | : | CASE NOS. CA2019-06-059<br>CA2019-06-060 |
| Z.D., et al. | : | O P I N I O N<br>1/27/2020 |
| | : | |
| | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. 16-D000118 and 17-D000177

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee, Warren County Children's Services

Scott A. Hoberg, 9146 Cincinnati-Columbus Road, West Chester, Ohio 45069, for appellee, father

A. Aaron Aldridge, 130 East Mulberry Street, Lebanon, Ohio 45036, for appellant, mother

**M. POWELL, J.**

{¶ 1} Z.D. and R.D. are the children of E.E., appellant herein ("Mother"), and A.D. ("Father") (Z.D. and R.D. shall hereinafter be referred to collectively as the "Children"). Mother appeals from the Warren County Juvenile Court's decision placing the Children into

the legal custody of A.H. and A.H. ("Foster Parents").[1]  For the reasons outlined below, we affirm the juvenile court's decision.

{¶ 2}  Z.D. was born on August 29, 2014.  Warren County Children Services ("WCCS") became involved with Z.D. in 2015 after the agency received a referral concerning domestic violence in the home.  On October 16, 2015, WCCS filed a complaint alleging that Z.D. was a dependent child.  Pursuant to the motion, the juvenile court placed Z.D. in the shelter care of WCCS.  In January 2016, Z.D. was adjudicated a dependent child based upon concerns of domestic violence occurring between Mother and Father in Z.D.'s presence.  As a result, Z.D. was placed in the temporary custody of WCCS and was subsequently placed in foster care.  A few months later, at the direction of children services, Mother obtained a domestic violence civil protection order ("DVCPO") against Father.  The DVCPO prohibited Father from having any contact with Mother and was to remain in effect for a period of five years.  A case plan was then developed for Mother and Father, with a goal of reunification with Mother.  We note that Father was ultimately removed from the case plan due to his lack of engagement in the case plan services.

{¶ 3}  On August 29, 2016, Mother gave birth to R.D.  Shortly after R.D.'s birth, WCCS filed a complaint alleging she was a dependent child and requested the juvenile court to grant protective supervision to WCCS, which the juvenile court ordered after a hearing.  R.D. remained in Mother's custody until October 2016, when WCCS discovered Mother had been in contact with Father in violation of the DVCPO.  Due to the DVCPO violation, WCCS filed a motion for an emergency order of temporary custody, which the juvenile court granted.  As a result, R.D. was placed in the temporary custody of WCCS and was placed in the foster home with Z.D.  At that time, Mother's visitation with both Children

---

1. The Children's father did not file an appeal in this matter.

was restricted to supervised visitation.

{¶ 4} On October 27, 2016, the juvenile court held an adjudicatory hearing, during which time the parties stipulated to the dependency of R.D. Thereafter, Mother's visitation with the Children gradually increased until late September 2017, when she resumed unsupervised visitation. Due to the looming expiration of the time Z.D. could remain in temporary custody pursuant to Z.D.'s adjudication on the October 2015 complaint, and to afford Mother additional time to progress with case plan services, WCCS filed a new complaint on October 11, 2017 alleging that Z.D. was a dependent child. Subsequently, Z.D. was adjudicated a dependent child upon this new complaint.

{¶ 5} Between November 2017 and April 2018, Mother's visitation with the Children fluctuated between being supervised and unsupervised. This fluctuation was due to Mother's inconsistent participation in case plan services, including testing positive for marijuana in November 2017 and February 2018. In April 2018, Mother resumed unsupervised visitation with the Children, which ultimately developed into an extended visit with Mother for several months.

{¶ 6} On July 27, 2018, Mother moved for legal custody of R.D and Z.D. On August 21, 2018, Father filed motions to amend the case plan and for visitation.

{¶ 7} On December 21, 2018, the Children's guardian ad litem ("GAL") filed a motion for the emergency removal of the Children from their placement with Mother. The motion was filed after the GAL became aware that Mother tested positive for marijuana in November 2018. The juvenile court granted the GAL's motion, and the Children were removed from Mother's care and returned to the foster home.

{¶ 8} On January 7, 2019, the GAL moved for legal custody of the Children, and requested the juvenile court to place Z.D. and R.D. in the legal custody of the Foster

Parents. On January 18, 2019, Father filed a second motion for visitation.

{¶ 9} The juvenile court held a two-day hearing before a magistrate regarding the parties' motions. After hearing extensive testimony from Mother, Father, the Foster Parents, the GAL, and the WCCS caseworker assigned to the Children's case, the magistrate granted the GAL's motion for legal custody, denied Mother's motion for legal custody, and granted in part and denied in part Father's motion for visitation. Mother and Father filed objections to the magistrate's decision. On May 20, 2019, the juvenile court issued a decision overruling Mother's and Father's objections to the magistrate's decision, thereby affirming and adopting the magistrate's decision in its entirety. Mother now appeals from the juvenile court's decision, raising one assignment of error for our review.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT'S GRANT OF CUSTODY OF THE MINOR CHILDREN TO NON-PARENTS IS NOT SUPPORTED BY A PREPONDERANCE OF THE EVIDENCE.

{¶ 12} In her sole assignment of error, Mother argues the juvenile court's decision to grant legal custody of Z.D. and R.D. to the Foster Parents was not supported by a preponderance of the evidence and not in the best interests of the Children.

{¶ 13} Pursuant to R.C. 2151.353(A)(3), if a child is adjudicated an abused, neglected, or dependent child, the juvenile court may award legal custody of the child "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child[.]" Unlike permanent custody, legal custody merely vests in the custodian the physical care and control of the child while residual parental rights and responsibilities remain intact. *In re M.M.*, 12th Dist. Fayette No. CA2010-12-034, 2011-Ohio-3913, ¶ 7. Therefore, unlike permanent custody, granting legal custody does not

terminate the parent-child relationship. *Id.*

{¶ 14} Once a child has been adjudicated dependent, neglected or abused, a juvenile court "may award legal custody to a nonparent upon a demonstration by a preponderance of the evidence that granting legal custody to the nonparent is in the child's best interest." *In re C.A.*, 12th Dist. Butler No. CA2014-07-165, 2015-Ohio-1410, ¶ 13. In order to determine the best interest of a child, R.C. 3109.04(F)(1) requires the juvenile court to consider all relevant factors, including, but not limited to, any applicable factors provided in R.C. 3109.04(F). *In re L.T.*, 12th Dist. Butler Nos. CA2016-03-048 and CA2016-03-058, 2016-Ohio-5272, ¶ 60. These factors include, but are not limited to: (1) the wishes of the child's parents regarding the child's care; (2) the wishes and concerns of the child, as expressed to the juvenile court; (3) the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (4) the child's adjustment to the child's home, school, and community; and, (5) the mental and physical health of all persons involved. R.C. 3109.04(F)(1)(a) thru (e).

{¶ 15} The juvenile court enjoys broad discretion in custody proceedings. *In re E.L.C.*, 12th Dist. Butler No. CA2014-09-177, 2015-Ohio-2220, ¶ 16. As a result, the standard of review in custody decisions is whether the juvenile court abused its discretion. *C.D. v. D.L.*, 12th Dist. Fayette No. CA2006-09-037, 2007-Ohio-2559, ¶ 14. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The discretion that a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. *In re C.A.*, 2015-Ohio-1410 at ¶ 15. A reviewing court must not substitute its judgment for that of the juvenile court when applying the abuse of discretion

standard. *Morrison v. Robinson*, 12th Dist. Fayette No. CA2012-06-019, 2013-Ohio-453, ¶ 26.

{¶ 16} At the custody hearing, the juvenile court first heard testimony from Mother, who testified that she could adequately provide for the Children if she was awarded legal custody. Specifically, Mother indicated she maintains housing in Middletown that is adequate for her and Children and that she earns enough through her employment to provide necessities for them. Mother then described her relationship with her Children, and indicated she felt unbonded with R.D., but desired legal custody in order to establish a bond like she has with Z.D. With regard to Z.D., Mother indicated Z.D. has trouble expressing her emotions and engages in in-home therapy to assist with those issues. Mother stated Z.D. would have bursts of emotion when she was upset and would scream for periods of time. When Mother initially began visits with Z.D., the child would "throw things," say inappropriate words, and would spit at, kick, and hit Mother. Mother responded by spanking Z.D., which resulted in a court order prohibiting Mother from using corporal punishment on the Children. Mother indicated she would continue some type of counseling services with Z.D. if she was awarded legal custody.

{¶ 17} With regard to the Foster Parents, Mother testified she wanted the Children to maintain their relationship with the Foster Parents. According to Mother, she did not want to "completely tear [the Children] away from [the Foster Parents], but she "would like to feel like a mother again." Mother believed both R.D. and Z.D. were comfortable with the Foster Parents and she would allow the Children to attend overnights with them if she was awarded custody.

{¶ 18} Mother also testified regarding her relationship with Father and indicated the DVCPO remained in effect at the time of the hearing and that she has no contact with

Father. Despite Mother's claims of no contact with Father, Mother admitted there had been two violations of the DVCPO and that Father had been in her home and vehicle. Mother acknowledged that her recent contact with Father was the reason R.D. was removed from her care. Because of the DVCPO violations, Mother indicated she understood the agency had concerns regarding her lack of appreciation for court orders and questioned her judgment. Regarding visitation, Mother stated she was open to modifying the DVCPO to allow for her supervision of visitation between the girls and Father; however, Mother believed Father should continue working with his caseworker before visitation should be allowed.

{¶ 19} Mother then testified regarding her marijuana use and stated she has used marijuana since at least 2011, and that she has continued to use marijuana throughout the course of this case. Despite her continued use, Mother testified the Children had never witnessed her smoking marijuana nor had they seen the drug. According to Mother, her level of use fluctuates with her "stress level" and "just kind of how [she's] feeling." She admitted to using marijuana approximately two months before the custody hearing and further confirmed she was convicted of possessing drug paraphernalia related to marijuana in 2012. Mother also indicated she had refused a drug screen during this case because it would have been positive for alcohol and admitted to driving after using marijuana.

{¶ 20} Despite engaging in drug and alcohol treatment, which was required by Mother's case plan, Mother was not concerned with her continued use of marijuana and alcohol. Rather, Mother testified she did not consider her usage throughout the case as "abuse," but an "aid" for her health ailments. Specifically, Mother suffers from irritable bowel syndrome, Crohn's Disease, carpal tunnel, post-traumatic stress disorder, and depression, and she believes only marijuana can subdue her symptoms on a daily basis. Mother

testified she is prescribed several medications to assist with her pain, however, she feels her prescribed medication is generally ineffective. As such, Mother indicated she prefers smoking marijuana to alleviate her discomfort and has "looked into" receiving a medical marijuana card but had not applied by the time of the hearing. Mother further testified she never informed WCCS that she uses marijuana to address her health issues or symptoms but did not know she needed to do so.

{¶ 21} Mother described marijuana as "something that lets [her] breathe," not something she "needs" or "can't live without." However, Mother confirmed that she understood her Children were removed most recently due to her drug use and could not provide a reason why she had not stopped using marijuana. Mother further acknowledged that marijuana had prevented her from fulfilling her parenting duties but disagreed that her drug use had prevented her from properly caring for her Children.

{¶ 22} The juvenile court also heard from the Foster Parents. Foster mother A.H. testified that Z.D. had been in her care for approximately two years and six months, while R.D. had been in her care for two years and three months. The Foster Parents confirmed they desired legal custody of the Children, and both agreed to facilitate visitation between the Children and Mother.

{¶ 23} The juvenile court then heard testimony from the GAL, who testified that he had been involved with the case since its inception. According to the GAL, the Children were recently in Mother's custody from October 2018 through December 2018 and he had no concerns with their care until the report of marijuana use. At that time, the GAL elected to file a motion for legal custody of the Children to the Foster Parents, and testified the motion was based upon Mother's inconsistency in fulfilling case plan services. Specifically, he indicated Mother had failed to follow the recommendations after completing a drug and

alcohol assessment.

{¶ 24} The GAL described his concerns with Mother's marijuana use, including his concern that Mother believes smoking marijuana is in her best interest and that Mother prioritizes her interests over what is best for the Children. As a result of those concerns, Mother's contact with the Children was restricted throughout the case. The GAL stated he had addressed his concerns with Mother and informed her that "the main hurdle to her getting her [C]hildren back was [her] marijuana use." The GAL indicated he explained to Mother that if she could test clean for an extended period of time, the Children would "more than likely" be returned to her care. Regarding Mother's potential prescription for marijuana, the GAL testified he would remain concerned with Mother's marijuana use even if she was prescribed marijuana. Specifically, he felt a prescription would not guarantee Mother could parent while under the influence of marijuana. The GAL also expressed concerns with Mother's ability to follow a prescription for marijuana and was very concerned with Mother's admission to driving after smoking the drug.

{¶ 25} The juvenile court also heard testimony regarding the GAL's concerns with Mother's ability to protect her Children. According to the GAL, Z.D. was initially removed from Mother's care because Mother failed to obtain a DVCPO against Father prior to the agency's involvement. The GAL was also concerned that, since obtaining the DVCPO, Mother had been in contact with Father on at least two occasions and the Children were present on one of those occasions. The GAL then indicated he was adamantly opposed to modifying the DVCPO to allow visitation with Father if the Children were placed in Mother's custody.

{¶ 26} The GAL further testified that he filed the motion for legal custody because the Children had been in foster care for the majority of their lives and needed permanency,

a routine, and a schedule. The GAL indicated he did not believe Mother was able to provide the permanency the Children need and deserve. Specifically, as a direct consequence of Mother's inability to make good decisions throughout the case, the Children were frequently unsure where they would reside long term. To the contrary, the GAL testified the Children have all their needs met in their foster home and believes "the [Foster Parents] are in the best position to provide permanency for these [C]hildren." The GAL acknowledged that the Children never reported concerns regarding their visits with Mother, but due to their age, the GAL believed they were too young to express such concerns. He then stated that while visitation between Mother and the Children could be beneficial in the future, he would recommend supervised visitation until Mother is able to demonstrate an extended period of sobriety.

{¶ 27} In concluding his testimony, the GAL stated it is in the best interests of the Children to be placed into the legal custody of the Foster Parents and that such a placement was the least restrictive option for these Children. Eventually, if Mother or Father could alleviate the concerns set forth by the agency, the GAL indicated the parents could receive additional contact with the Children or could petition the juvenile court for custody at that time. However, at the time of the hearing the GAL believed that if Mother was granted legal custody, the parties "would be back [in court] sooner rather than later."

{¶ 28} The WCCS caseworker assigned to the Children's case also testified. According to the caseworker, Mother needed to alleviate the agency's concerns identified in its dependency complaints before she could reunite with her Children. Those concerns were set forth in Mother's case plan and included ongoing domestic violence in the home between Mother and Father and Mother's trouble adhering to the terms of the DVCPO. In order to address WCCS's concerns, Mother was recommended to follow all court orders,

be cooperative with the agency, submit to random drugs screens, complete a drug and alcohol assessment, complete a mental health assessment, and engage in domestic violence services. The caseworker testified that despite Mother's progress in the case plan services, WCCS had lingering concerns regarding Mother's drug use. Specifically, the caseworker was concerned that although Mother had engaged in drug and alcohol treatment "for years," she continued to use marijuana. This concern was exacerbated when the Children were removed from Mother's care due to her marijuana use and Mother continued to use following their removal.

{¶ 29} The caseworker further testified that while the agency did not want to completely terminate Mother's rights in this case, the agency believed a placement with the Foster Parents would be in the best interests of Z.D. and R.D. The agency's assessment was that the Foster Parents' home was stable and the Children were comfortable there. Although Mother had maintained stable housing throughout much of the case, the caseworker noted Mother has shown an inability to provide a stable living environment for the Children.

{¶ 30} At the conclusion of the evidence, the magistrate issued a decision granting legal custody to the Foster Parents. In doing so, the juvenile court summarized its holding as follows:

> Mother has had over three years to achieve stability for herself and her children and she has failed to do so time and time again. Although it is apparent that Mother loves the girls, she appears unable to prioritize their needs and stability above her own desires. The [Foster Parents] have provided the girls with the love and stability that they so desperately need.

{¶ 31} Considering the testimony and evidence presented we find the record fully supports the juvenile court's decision finding it was in Z.D.'s and R.D's best interest to be placed in the legal custody of the Foster Parents.

{¶ 32} Mother argues the juvenile court's decision to grant legal custody to the Foster Parents was improper because the juvenile court did not consider the wishes and concerns of the Children and based its decision entirely upon Mother's marijuana use and prior abusive relationship with Father. We find no merit to Mother's claims.

{¶ 33} With regard to Mother's relationship with Father, Mother argues the juvenile court improperly considered the parties' prior relationship because the agency "had no concerns over Mother's contact with Father[.]" While the record reflects the agency did not have any recent concerns regarding Mother's contact with Father, the agency clearly had ongoing concerns with the parties' contact throughout the case. Specifically, the agency originally became involved with Z.D. due to ongoing domestic violence between Mother and Father in the child's presence. It was only after WCCS removed Z.D. from Mother's care and urged Mother to obtain a DVCPO against Father that she did so. Mother's subsequent contact with Father in violation of the DVCPO was the reason WCCS removed R.D. from Mother's care. Moreover, the record indicates that, while the DVCPO was in effect, Mother allowed Father in her home while the Children were present and allowed Father in her vehicle. These violations resulted in the agency restricting Mother's parenting time on each occasion. Furthermore, despite the history of violence between the parties and Father's failure to engage in case plan services, Mother indicated she would be willing to amend the DVCPO to allow visitation between Father and the Children, a modification that was wholly unsupported by the GAL. In light of the above, the record reflects Mother's relationship and contact with Father, although not a current agency concern, remained a troubling portent. As such, the juvenile court did not abuse its discretion in giving weight to the parties' prior relationship, their history of inappropriate contact in violation of the DVCPO, and Mother's indifferent response to Father's abusive history.

{¶ 34} We also reject Mother's argument that the juvenile court erred in finding Mother's marijuana use, without some evidence of detriment to the Children, was sufficient to conclude it was in the Children's best interests to be placed in the legal custody of the Foster Parents. Here, the record reflects Mother understood the primary barrier to reunifying with Z.D. and R.D. was her marijuana use. Additionally, Mother's visitation was consistently restricted after testing positive for marijuana. Ultimately, after progressing through her case plan services and receiving an extended visit with the Children, Mother's continued marijuana use resulted in the removal of her Children and the GAL's motion for legal custody. Thus, although Mother claims the Children never saw her marijuana use and that her use did not detrimentally affect the Children, it resulted in their removal from her care, and created an unstable environment for the girls due to their frequently changing visitation schedule with their mother.

{¶ 35} Furthermore, despite knowing she could not reunify with her Children if she continued using, Mother testified she believed using marijuana was in her best interest. She also elected to withhold information from WCCS relating to her claimed health concerns and failed to receive a medical marijuana card for which she allegedly qualifies. Mother also was convicted of possessing marijuana paraphernalia and admitted to driving under the influence of the drug. As such, the record reflects Mother's marijuana use has affected her ability to make sound decisions and to abide by the law, even when faced with the consequence of losing custody of her Children. As a result, we find the juvenile court did not abuse its discretion in considering Mother's consistent marijuana use throughout the case and its effect on the Children when determining what was in their best interests.

{¶ 36} Lastly, the juvenile court's legal custody determination properly considered the concerns of the Children. The evidence adduced at the hearing demonstrates the

Children interact well with both Mother and the Foster Parents.  As the juvenile court found, it is clear that Mother loves the Children and it is equally clear that there is a loving bond between the Children and the Foster Parents.  However, the record also reflects Mother has been unable to put the interests of the Children before her own.  This is demonstrated through her inability to stop using marijuana, preventing reunification with the girls.  The Foster Parents can provide a stable and loving home for the Children and have done so for much of the Children's lives.  We further note that the Children's ages affect their ability to effectively voice their concerns.  As such, it was not an abuse of discretion for the juvenile court to rely upon other testimony presented at the hearing to make a legal custody determination for Z.D. and R.D.

{¶ 37} Based on the foregoing, we find the trial court did not abuse its discretion in determining that it is in the best interests of the Children to grant legal custody to the Foster Parents.  We further find that such a determination was supported by a preponderance of the evidence.  Mother's assignment of error is therefore overruled.

{¶ 38} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.