[Cite as *In re K.G.*, 2021-Ohio-2154.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| IN RE: | : | |
| K.G. | : | CASE NO. CA2020-11-017 |
| | : | O P I N I O N<br>6/28/2021 |
| | : | |
| | : | |
| | : | |

APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2018-3124

Bieser, Greer & Landis LLP, Matthew M. Suellentrop, 6 North Main Street, Suite 400, Dayton, Ohio 45402-1908, for appellant

Andrew T. McCoy, Clinton County Prosecuting Attorney, William C. Randolph, 1025 S. South Street, Wilmington, Ohio 45177, for appellee, Clinton County Children Services

Virginia C. Vanden Bosch, 9506 West State Route 73, Wilmington, Ohio 45177, guardian ad litem

Anthony J. Baker, 2079 Chapparal Road, West Union, Ohio 45693, for father

**S. POWELL, J.**

{¶ 1} Appellant, the mother of K.G. ("Mother"), appeals the decision of the Clinton

County Court of Common Pleas, Juvenile Division, awarding legal custody of K.G. to the

child's paternal great aunt, K.K. ("Aunt"), after appellee, Clinton County Children Services ("CCCS"), filed a motion requesting Aunt be granted legal custody of K.G. For the reasons outlined below, we affirm the juvenile court's decision.

{¶ 2} On December 21, 2018, the juvenile court held a shelter care hearing. Following this hearing, the juvenile court placed K.G. in the temporary custody of CCCS. It is undisputed that Mother tested positive for marijuana and benzodiazepines shortly after the shelter care hearing concluded. K.G., who was born on September 16, 2013, was at that time five years old.

{¶ 3} On December 27, 2018, CCCS filed a complaint alleging K.G. was an abused, neglected, and dependent child. In its complaint, CCCS alleged that it had filed its complaint after receiving a report that Mother had left K.G.'s younger sibling, D.S., at a friend's house at 2:30 a.m. after Mother showed up unannounced acting "hysterical" claiming "someone stole money from her." CCCS also alleged that D.S., who was at that time two years old, was sick and had not received any medical attention prior to Mother dropping the child off at her friend's house.

{¶ 4} On January 7, 2019, the juvenile court appointed a guardian ad litem for K.G. A case plan was thereafter established that required Mother to, among other things, attend parenting and domestic violence classes, obtain stable housing and income, as well as engage in any necessary drug, alcohol, and mental health treatment. Shortly thereafter, on January 29, 2019, the juvenile court held a pretrial hearing on the matter. Following this hearing, the juvenile court determined that it was in K.G.'s best interest to place K.G. in the temporary custody of Aunt.

{¶ 5} On February 19, 2019, the juvenile court adjudicated K.G. a neglected child. Several weeks later, on March 27, 2019, the juvenile court issued a dispositional decision finding it was in K.G.'s best interest to remain in the temporary custody of Aunt.

{¶ 6} On May 28, 2019, the juvenile court held a review hearing. Following this hearing, the juvenile court issued an entry that found Mother had completed parenting and domestic violence classes, but that Mother had "yet to obtain housing and to engage in drug/alcohol treatment."

{¶ 7} On July 8, 2020, following several more review hearings, CCCS moved the juvenile court to grant legal custody of K.G. to Aunt. In support of its motion, CCCS noted that K.G. had been in Aunt's temporary custody since January 29, 2019, a period of over 17 consecutive months. CCCS also noted, in pertinent part, the following:

> The mother has made sporadic progress on her case plan and has not created a stable, safe environment which the agency or the Court has deemed appropriate for K.G. The father has been removed from the case plan due to no contact with the caseworker or the agency and failing to appear at court. [Aunt] has an approved home study and has expressed her desire that she be granted legal custody.

{¶ 8} CCCS further noted the following:

> The child is doing well in the custody of her paternal aunt. A grant of legal custody would permit the child to have a legally secure placement which her paternal aunt can provide care for the child without fear of disruption.

CCCS attached to its motion a statement of understanding signed by Aunt. The statement of understanding specifically stated that Aunt understood and agreed that it was her intent to become K.G.'s legal custodian.

{¶ 9} On September 21, 2020, the juvenile court held a hearing on CCCS' motion. During this hearing, the juvenile court heard testimony from three witnesses: an ongoing caseworker with CCCS, K.G.'s guardian ad litem, and Aunt. As part of this testimony, the ongoing caseworker testified that CCCS requested K.G. be placed in Aunt's legal custody because "[Aunt] has been able to demonstrate stability and a routine, and the ability to meet all of [K.G.'s] needs." The ongoing caseworker also testified that "[K.G.] has a routine with

[Aunt], and is happy in the home."

{¶ 10} K.G.'s guardian ad litem also testified that it was her recommendation that Aunt be granted legal custody of K.G. because Aunt has "provided stability, continuity" for K.G. K.G.'s guardian ad litem also testified that Aunt has "been there for [K.G.], and I believe that, in speaking with [K.G.], even though she's just seven, she seems, appears to be very happy where she's at." This was contrary to Mother, who, as the ongoing caseworker testified, "tends to only make case plan progress right around the time that we're going to court, and there hasn't been stability."

{¶ 11} On October 27, 2020, the juvenile court issued a decision awarding legal custody of K.G. to Aunt. In so holding, the juvenile court noted that while Mother has "done better," she is still "in no position to raise her child." The juvenile court found that this was due, at least in part, to Mother's inability to obtain a stable income via verifiable employment. This was also due to Mother's inability to provide proof that she had completed her mental health treatment.

{¶ 12} As it relates to Aunt, however, the juvenile court found K.G. "has developed a lasting bond with [Aunt] and the child is doing well" since being placed in Aunt's care. The juvenile court also noted that K.G. "has expressed her wish to continue to live with [Aunt]." The juvenile court further stated that "the law provides we need to move forward for the best interests of [K.G.]," which, in this case, was to award legal custody to Aunt. Mother now appeals the juvenile court's decision awarding legal custody of K.G. to Aunt, raising the following single assignment of error for review.

{¶ 13} THE AWARD OF LEGAL CUSTODY TO [AUNT] WAS ERROR AND THE DECISION OF THE TRIAL COURT WAS AN ABUSE OF DISCRETION.

{¶ 14} Mother argues the juvenile court erred by awarding legal custody of K.G. to Aunt. We disagree.

- 4 -

{¶ 15} Pursuant to R.C. 2151.353(A)(3), if a child is adjudicated a neglected child the juvenile court may award legal custody of the child to:

> either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. A person identified in a complaint or motion filed by a party to the proceedings as a proposed legal custodian shall be awarded legal custody of the child only if the person identified signs a statement of understanding for legal custody * * *[.]

{¶ 16} Based on the plain language of the statute, "the juvenile court is authorized to award legal custody of a child adjudicated abused, neglected, or dependent to any person who, prior to the dispositional hearing, files a motion requesting legal custody." *In re J.G.*, 12th Dist. Fayette No. CA2019-02-001, 2019-Ohio-3620, ¶ 7. "The juvenile court may also grant legal custody to a proposed legal custodian who is identified as such in a complaint or motion filed by a party to the proceedings if that proposed legal custodian signs a statement of understanding for legal custody." (Internal quotation marks deleted). *Id.*

{¶ 17} Unlike a grant of permanent custody, an award of legal custody does not terminate the parent-child relationship. *In re L.C.*, 12th Dist. Warren No. CA2019-08-086, 2020-Ohio-4629, ¶ 13; *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 7 ("granting legal custody does not terminate the parent-child relationship"). Rather, an award of legal custody merely vests in the custodian the physical care and control of the child while the residual parental rights and responsibilities remain intact with the child's parent(s). *In re A.B.*, 12th Dist. Brown No. CA2016-11-021, 2017-Ohio-5776, ¶ 10. This includes, for instance, "contact and visitation rights and a duty of support." *In re M.M.*, 12th Dist. Fayette No. CA2010-12-034, 2011-Ohio-3913, ¶ 7. This also includes the ability to petition the juvenile court for a custody modification in the future. *In re T.B.*, 5th Dist. Muskingum No. CT2018-0065, 2019-Ohio-1747, ¶ 21. An award of legal custody, therefore,

is not as drastic a remedy as a grant of permanent custody because such an award "does not divest parents of their residual parental rights, privileges, and responsibilities." *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, ¶ 17; *In re L.D. (A.D.)*, 10th Dist. Franklin No. 12AP 985, 2013-Ohio-3214, ¶ 7 ("[l]egal custody where parental rights are not terminated is not as drastic a remedy as permanent custody").

{¶ 18} A juvenile court "may award legal custody to a nonparent upon a demonstration by a preponderance of the evidence that granting legal custody to the nonparent is in the child's best interest." *In re L.A.B.*, 12th Dist. Fayette No. CA2012-03-008, 2012-Ohio-5010, ¶ 12. "Preponderance of the evidence" means evidence that is more probable, more persuasive, or of greater probative value. *In re T.M.*, 12th Dist. Butler No. CA2007-01-019, 2007-Ohio-6034, ¶ 25. To determine the best interest of a child, R.C. 3109.04(F)(1) requires the juvenile court to consider all relevant factors. *In re P.B.*, 12th Dist. Warren No. CA2019-10-108, 2021-Ohio-414, ¶ 13. This includes any applicable factors provided for by R.C. 3109.04(F)(1)(a) thru (j). *In re L.T.*, 12th Dist. Butler Nos. CA2016-03-048 and CA2016-03-058, 2016-Ohio-5272, ¶ 60. These factors include, but are not limited to, the wishes of the child's parents regarding the child's care; the wishes and concerns of the child, as expressed to the juvenile court; and the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest. R.C. 3109.04(F)(1)(a) thru (c). These factors also include the child's adjustment to the child's home, school, and community and the mental and physical health of all persons involved. R.C. 3109.04(F)(1)(d) and (e).

{¶ 19} The juvenile court enjoys broad discretion in custody proceedings. *In re E.L.C.*, 12th Dist. Butler No. CA2014-09-177, 2015-Ohio-2220, ¶ 16. This court reviews a juvenile court's custody determination for an abuse of that discretion. *In re A.R.*, 12th Dist. Butler No. CA2015-08-143, 2016-Ohio-4919, ¶ 26. Abuse of discretion connotes more than

an error of law or judgment; an abuse of discretion instead implies that the juvenile court's attitude was unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  "The discretion granted to a juvenile court in custody matters 'should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'"  *In re A.C.*, 12th Dist. Clermont No. CA2006-12-105, 2007-Ohio-3350, ¶ 15., quoting *In re A.W.-G.*, 12th Dist. Butler No. CA2003-04-099, 2004-Ohio-2298, ¶ 6.  "A reviewing court must not substitute its judgment for that of the juvenile court when applying the abuse of discretion standard."  *In re Z.D.*, 12th Dist. Warren Nos. CA2019-06-059 and CA2019-06-060, 2020-Ohio-234, ¶ 15.  A reviewing court must also defer to the juvenile court's findings regarding witness credibility.  *In re L.S.*, 12th Dist. Warren Nos. CA2017-11-157 and CA2017-11-160, 2018-Ohio-1981, ¶ 29 ("we defer to the factfinder with respect to credibility determinations").  This is because "much may be evident in the parties' demeanor and attitude that does not translate well to the record."  *In re L.C.*, 2020-Ohio-4629 at ¶ 16.

{¶ 20} In her single assignment of error, Mother argues the juvenile court failed to appropriately consider and balance the evidence in this case prior to awarding legal custody of K.G. to Aunt.  This is because, according to Mother, the juvenile court "disregarded the totality of the progress made by [Mother] in an otherwise unprecedented year plagued by the consequences of a worldwide health pandemic."  This includes, for instance, Mother making "dramatic progress in trying times after being homeless * * *."  However, while Mother certainly did make some progress towards reunification with K.G., the juvenile court's decision finding it was in K.G.'s best interest to grant legal custody to Aunt was not an abuse of discretion.  That is to say, given the evidence properly before this court, which includes the transcript of the hearing on CCCS' motion, the juvenile court's decision to grant legal custody to Aunt was not unreasonable, arbitrary, or unconscionable.

- 7 -

{¶ 21} K.G., who is now seven years old, has been in the continuous and exclusive custody of Aunt for over two years. During this time, K.G. has developed a strong and lasting bond with Aunt, while, at the same time, Aunt has provided stability and continuity for K.G. This is contrary to Mother, who, as the ongoing caseworker testified, "tends to only make case plan progress right around the time that we're going to court, and there hasn't been stability." The record also indicates that K.G. is happy living with Aunt and that K.G. has expressed her desire to continue living with Aunt. Therefore, while Mother believes the juvenile court "failed to prove an adequate weighting of the evidentiary record," the preponderance of the evidence supports the juvenile court's decision finding it was in K.G.'s best interest to award legal custody to Aunt. Mother's claim otherwise lacks merit.

{¶ 22} In so holding, we note that Mother makes much ado about the case plan and the portions of the case plan that were "enforceable" against her. However, even if we were to find merit to Mother's claim that only a portion of the case plan was, in fact, "enforceable," "it is well settled that successful completion of one's case plan is not dispositive of the issue of reunification." *In re K.G.*, 12th Dist. Clermont Nos. CA2020-08-047 thru CA2020-08-049, 2021-Ohio-1182, ¶ 53, citing *In re E.B.*, 12th Dist. Warren Nos. CA2009-10-139 and CA2009-11-146, 2010-Ohio-1122, ¶ 30 ("it is well-settled that the completion of case plan services alone does not equate to or necessitate a finding that the parents have substantially remedied the conditions that caused the removal of the child from the home").

{¶ 23} "[T]he key concern is not whether the parent has successfully completed the case plan, but whether the parent has substantially remedied the concerns that caused the child's removal from the parent's custody." *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 24. In other words, while successful completion of the case plan may certainly be a relevant factor for the juvenile court to consider, "'the case plan is simply a means to a goal, but not the goal itself.'" *In re F.S.*, 12th Dist. Fayette Nos. CA2020-08-

011 and CA2020-08-012, 2021-Ohio-345, ¶ 68, quoting *In re A.R.*, 2016-Ohio-4919 at ¶ 18. This makes sense when considering the juvenile court, just like this court, is concerned primarily with what is in the best interest of the child and not whether the case plan was, or was not, successfully completed. Therefore, despite Mother's claims, regardless of which portions of the case plan may be "enforceable" against her, the juvenile court's decision finding it was in K.G.'s best interest to award legal custody to Aunt was not error.

{¶ 24} For the reasons outlined above, and because we find no merit to any of the arguments advanced by Mother herein, Mother's single assignment of error challenging the juvenile court's decision to award legal custody of K.G. to Aunt lacks merit and is overruled.

{¶ 25} Judgment affirmed.

M. POWELL, P.J., and BYRNE, J., concur.