[Cite as *In re A.B.*, 2022-Ohio-4716.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| IN RE: | : | CASE NOS. CA2022-05-022 |
| | | CA2022-05-023 |
| A.B., et al. | : | |
| | | O P I N I O N |
| | : | 12/28/2022 |
| | : | |
| | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. 2020 JC 05353; 2020 JC 05356

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas A. Horton, Assistant Prosecuting Attorney, for appellee.

The Law Office of Wendy R. Calaway Co., LPA, and Wendy R. Calaway, for appellant.

**M. POWELL, P.J.**

{¶ 1} Appellant ("Father") appeals a decision of the Clermont County Court of Common Pleas, Juvenile Division, granting legal custody of his daughters, Annie and Katie, to the girls' maternal aunt and uncle (collectively "Aunt"). The girls' biological mother ("Mother") is not a party to this appeal. As pertinent to this appeal, Father and Mother also have a biological son, Reed, who was born in 2004.[1]

---

1. For privacy and readability, we refer to Father's daughters and son using fictitious names.

**{¶ 2}** On November 24, 2020, the Clermont County Department of Job and Family Services (the "Agency") filed a complaint alleging that Annie was an abused, neglected, and dependent child. Annie was 13 years old. The complaint alleged that Annie had, on numerous occasions, disclosed sexual abuse by Reed, the latest being November 6, 2020, had medical concerns that needed attention, lacked adequate parental care, was involved in domestic violence, and did not feel safe at home. On December 2, 2020, the Agency filed a complaint alleging that Katie was a dependent child. Katie was just shy of ten years old. The complaint alleged that Mother had tested positive for drugs while attending Reed's criminal hearing for domestic violence and was unable to provide a safe environment for Katie. At the time of the complaints, Father was incarcerated for domestic violence against Mother; Reed was 16 years old. The juvenile court granted emergency custody of the girls to the Agency, and the girls were placed with a nonrelative. A guardian ad litem was appointed to represent the girls.

**{¶ 3}** Annie and Katie were adjudicated dependent on December 8, 2020, and December 22, 2020, respectively. Following a dispositional hearing in February 2021, the juvenile court granted temporary custody of the girls to the Agency. Later that month, the girls were placed with Aunt, where they have remained for the duration of the case and where they are thriving. Aunt lives two to two and one-half hours away from Clermont County. Father was released in February 2021.

**{¶ 4}** A case plan was initially established for Mother; Father was included in the case plan upon his release. The case plan for Mother and Father was prepared with the goal of reunification. Among other requirements, the case plan required Mother to participate in a substance abuse assessment and follow all recommended treatments, and Father to participate in a substance abuse assessment and complete an anger

management program. Father completed his case plan in short order; by contrast, Mother did not complete the substance abuse component of her case plan and was subsequently charged with a felony drug offense. The record also shows that Mother permitted contact between the girls and Reed during the proceedings below in violation of the juvenile court's prior no contact order. As a result of Father's completion of his case plan and Mother's failure to address her drug abuse, Reed was reunited with Father and lives with him. At Father's request, the Agency initiated family counseling for Father and the girls.

{¶ 5} On July 13, 2021, the Agency moved the juvenile court to award legal custody of Annie and Katie to Aunt. In support of its motion, the Agency stated that Mother was not participating in drug or mental health treatment, that there was "an active TPO in place due to sexual abuse allegations and [Reed] is not allowed to have contact with his siblings and therefore they cannot be in the same home," that both Annie and Katie expressed fear of returning to their parents and a desire to stay with Aunt, and that neither girl had participated in visitation "due to severe anxiety that is triggered by having contact with parents." Mother and Father separately moved for legal custody of the girls. Father also moved the juvenile court to hold the Agency's motion in abeyance.

{¶ 6} On September 21, 2021, a hearing on all three custody motions was held before a magistrate. Four witnesses testified during the hearing: an ongoing caseworker with the Agency, the girls' guardian ad litem, Aunt, and Annie. Testimony revealed that Annie and Katie both experienced neglect and abuse in their parents' care, that they were exposed to drug abuse, domestic violence, and alcohol abuse, and that they were further abused by Reed. Mother disbelieved the sexual abuse allegations regarding Reed and neither parent was able to protect the girls from Reed. The caseworker and guardian ad litem both testified that Annie and Katie were very bonded with Aunt, were well cared for

and thriving in Aunt's care, and that the girls were engaged in individual counseling. Both testified it was in the girls' best interest to grant Aunt legal custody. Aunt testified that she wanted Annie and Katie to have a relationship with Father, that she strongly encourages both sides to talk, and that the girls, Father, and Mother should engage in individual counseling before engaging in family counseling.

{¶ 7} Annie's testimony was compelling. Annie testified that in 2020 alone, her parents neglected her, gave her drugs, let her drink, and failed to allow her to receive adequate medical care, including after her neck was injured during a fight with Reed. Annie testified that she had a "really bad" childhood, that she witnessed numerous instances of domestic violence between her parents and was then forced to lie to hospital medical personnel, that she observed Father physically abusing Katie, and that Father failed to stop Reed from sexually abusing her. Annie recounted accidentally seeing Reed in the courthouse a month before the custody hearing, causing her to have a panic attack and vomit. Father has repeatedly denied past instances of domestic violence, causing Annie to fear he would certainly be violent again and reoffend. Annie stated she was open to considering family counseling with Father but stated she was not ready because every time they communicate, they get into an argument and one hangs up on the other. She recounted a recent instance when Father threatened to have "an army of people" go against her and bring in polygraph evidence after the girls told him they did not want to talk to him.

{¶ 8} Annie testified that since living with Aunt, she is no longer neglected, she is much happier, relaxed, and more self-confident, and she no longer feels she has to be a mother to Katie and instead can simply be a child. Nonetheless, were Katie to return to Father, Annie would go with her to protect her and make sure Katie had the childhood Annie did not have. Since living with Aunt, Annie is closer to Katie who has opened up about past

abuse she suffered in the parents' home. Annie stated that she refuses to talk to her parents despite Aunt's encouragement, that she does not want to return to her parents' custody, that returning to her parents would be detrimental to her mental and physical health, and that she wants to stay with Aunt.

{¶ 9} On September 22, 2021, the magistrate issued a decision finding it was in the best interest of Annie and Katie to grant legal custody to Aunt. The magistrate noted that despite his compliance with the case plan, Father could not be awarded legal custody of the girls at this time because Reed resided with him; family counseling for Mother and the girls would have been very beneficial in addressing the trust issues at the heart of the case and should have been initiated by the Agency early on in the case; given the magnitude of the family's need for counseling to properly address the serious impact of substance abuse, domestic violence, and the lack of basic trust on the family, "the severely damaged family relationship will likely take a long time to repair"; and "[i]t is, however, unquestionable in the best interest of the [girls] to have permanence; which [Aunt] can clearly provide."

{¶ 10} Father filed objections to the magistrate's decision, arguing the magistrate erred in granting legal custody to Aunt. Father asserted that the Agency's legal custody motion should have been held in abeyance until the Agency provided him with sufficient family counseling services so that he could improve his relationship with Annie and Katie. Father noted that at the time of the custody hearing, he only had one session of family counseling and very limited visitation with the girls.

{¶ 11} On March 28, 2022, the juvenile court overruled Father's objections and granted legal custody of Annie and Katie to Aunt. The juvenile court found that it was in the girls' best interest to grant legal custody to Aunt and that the Agency's services and planning were reasonable under the circumstances of the case. As pertinent to Father, the court

found that Reed's presence in Father's home was "an obstacle that cannot be overcome by family counseling," that Annie and Katie were exposed to an unhealthy lifestyle for a long period of time, that they were still afraid of Father and did not wish to visit with him, and that

> The trust issues in this family still remain unresolved. Even if the son moved out of his father's home, it is entirely unknown how long it would take before the daughters are even able to *face* their father without being anxious or scared. The children were so traumatized that there is no way of predicting whether and when they could live with their father again. The Court does not believe that a reunification with either one of the parents could take place within a six-month extension period.

{¶ 12} Father now appeals, raising one assignment of error:

{¶ 13} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN ADOPTING THE MAGISTRATE'S DECISION AWARDING LEGAL CUSTODY.

{¶ 14} Father argues the juvenile court erred in awarding legal custody of Annie and Katie to Aunt. Father asserts that the Agency did not make reasonable efforts to reunify him with Annie and Katie because it did not initiate family counseling earlier.

{¶ 15} A juvenile court enjoys broad discretion in custody proceedings. *In re K.G.*, 12th Dist. Clinton No. CA2020-11-017, 2021-Ohio-2154, ¶ 19. A juvenile court's custody determination will not be reversed absent an abuse of that discretion. *Id.*

{¶ 16} Pursuant to R.C. 2151.415(A)(3), a public children services agency that has been given temporary custody of a child because that child has been adjudicated an abused, neglected, or dependent child, may move the juvenile court to award legal custody of the child to "a relative or other interested individual." The juvenile court may award legal custody to a nonparent only "upon a demonstration by a preponderance of the evidence that granting legal custody to the nonparent is in the child's best interest." *In re K.M.*, 12th Dist. Butler No. CA2019-01-015, 2019-Ohio-1833, ¶ 37. A preponderance of the evidence

is evidence that is of a greater weight or more convincing than the evidence which is in opposition to it. *Id.*

{¶ 17} R.C. 2151.419(A) requires a children services agency to make "reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." R.C. Chapter 2151 does not define "reasonable efforts" but the term has been construed to mean "[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 28. "Reasonable efforts means that a children's services agency must act diligently and provide services appropriate to the family's need to prevent the child's removal or as a predicate to reunification." *In re L.G.*, 8th Dist. Cuyahoga No. 110789, 2022-Ohio-529, ¶ 60. "In other words, the agency must use reasonable efforts to help remove the obstacles preventing family reunification." *Id.*

{¶ 18} What constitutes "reasonable efforts" requires consideration of the nature of a case plan and varies with the circumstances. *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 31; *In re L.G.* at ¶ 62. In determining whether the agency made reasonable efforts to reunify the family during the custody proceedings, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. *In re S.U.*, 12th Dist. Clermont No. CA2014-07-055, 2014-Ohio-5748, ¶ 16. "Reasonable efforts" does not mean all available efforts. Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible. *Id.* "In determining whether reasonable efforts were made, the child's health and safety shall be paramount." R.C. 2151.419(A).

{¶ 19} Upon a thorough review of the record, we find the Agency made reasonable

efforts to reunify Father with Annie and Katie. While the Agency could have initiated family counseling between Father and the girls earlier in the proceedings, the evidence plainly indicates it would not have resulted in reunification in the short term. The evidence does not suggest earlier family counseling would have made a difference. The Agency's case planning and efforts were reasonable under the circumstances of this case.

{¶ 20} When this case began, Father was incarcerated for domestic violence against Mother. Father's incarceration was the first obstacle to reunification. *See In re C.B.C.*, 4th Dist. Lawrence Nos. 15CA18 and 15CA19, 2016-Ohio-916. Upon his release, Father was added to the case plan which he promptly completed. Although the Agency originally planned to reunify Reed with Mother and Annie and Katie with Father, Father's prompt completion of his case plan combined with Mother's failure to address her drug abuse resulted in Reed being reunited with Father in August 2021. However, because of the no contact order between Reed and the girls, Reed's presence in Father's home stands as a major obstacle to Father's reunification with Annie and Katie and cannot be overcome by family counseling. *Id.* While Father told the caseworker that Reed would probably not live in Father's home once he turned 18 in January 2022, such was only a possibility, not a certainty.

{¶ 21} Other obstacles preventing reunification between Father and Annie and Katie are Father's repeated denials he ever committed domestic violence against his family, causing fear and anxiety in Annie that he will reoffend, and his inability to properly handle conflict with Annie and Katie when confronted with their refusal or reluctance to communicate with him. Annie recounted a recent instance when Father threatened to have "an army of people" go against her and bring in polygraph evidence after the girls told him they did not want to talk to him. Another incident occurred when Katie had her first family

counseling session with Father shortly before the custody hearing. This was Father's very first family counseling session. The session went poorly and Katie left the session in tears.

{¶ 22} R.C. 2151.419(A) requires a children services agency to make reasonable efforts "to make it possible for the child to return *safely* home." (Emphasis added.) In determining whether reasonable efforts were made, the child's health and safety are paramount. *Id.* Throughout the case and despite individual counseling, Annie and Katie continued to be extremely fearful of Father as a result of his domestic violence history and their unhealthy and difficult childhood marred by instability, domestic violence, substance abuse, abuse by Reed, and Father's failure to protect them. Annie has expressed she does not feel safe with Father. Both Annie and Katie were referred to a female therapist as a result of their refusal to engage in counseling with a male therapist. The record supports the juvenile court's finding that the girls were traumatized by their childhood and that their relationship with Father is severely damaged and will take a long time to repair before they can face Father without anxiety or fear.

{¶ 23} R.C. 2151.419(A) requires reasonable efforts, not unreasonable or all available ones. Given the circumstances of this case and the girls' paramount safety and health, both physical and mental, we find the Agency made reasonable efforts to make it possible for Annie and Katie to reunify with Father. In spite of this, those efforts have thus far been unsuccessful. We note that unlike a grant of permanent custody, an award of legal custody does not terminate the parent-child relationship. *In re K.G.,* 2021-Ohio-2154 at ¶ 17. Rather, an award of legal custody merely vests in the custodian the physical care and control of the child while the residual parental rights and responsibilities remain intact with the child's parent(s). *Id.* Such includes a parent's contact and visitation rights, a duty to support, and the ability to petition the juvenile court for a modification of custody in the

future. *Id.* The caseworker testified that family counseling with Father is necessary and a long-term proposition and testimony indicates that in due time, it remains a possibility given Aunt's desire for the girls to have a relationship with Father.

{¶ 24} In light of the foregoing, the juvenile court did not abuse its discretion in granting legal custody of Annie and Katie to Aunt. Father's assignment of error is overruled.

{¶ 25} Judgment affirmed.

PIPER and BYRNE, JJ., concur.