[Cite as *In re C.L.*, 2022-Ohio-3596.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

IN RE:                                    :

    C.L., et al.                           :          CASE NO. CA2021-09-008

                                       :          <u>O P I N I O N</u>
                                                10/11/2022

                                       :

                                       :

                                       :

APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. 20213058, 20213059, and 20213060

Martin P. Votel, Preble County Prosecuting Attorney, and Sean Brinkman, Assistant Prosecuting Attorney, for appellee.

Valerie Sargent Wood Law, LLC, and Valerie Sargent-Wood, for appellant.

       **BYRNE, J.**

       **{¶ 1}** Father appeals a decision of the Preble County Court of Common Pleas, Juvenile Division, granting legal custody of his two children (aged 7 and 8) to their maternal grandparents. For the reasons discussed below, we reverse the juvenile court's decision and remand for further proceedings.

**I. Factual and Procedural Background**

{¶ 2} On December 4, 2019, the juvenile court granted temporary custody of the children to the Preble County Department of Job and Family Services ("PCDJFS") after the agency filed complaints of alleged abuse and neglect. A year later, on December 19, 2020, the children were placed with their maternal grandparents, Phil and Tanya Loper. On June 17, 2021, the original complaints were dismissed due to statutory time constraints and PCDJFS filed new complaints. The new complaints asked the court to grant the Lopers legal custody of the children or, alternatively, to grant them temporary custody. In early July 2021, the court granted temporary custody of the children to the Lopers.

{¶ 3} On July 15, 2021, the juvenile court held an adjudicatory hearing. Mother appeared pro se and admitted the allegations in the complaint. Father, who was in prison for drug possession and tampering with evidence, did not personally attend the hearing but was represented by counsel. Father's counsel, with Father's permission, also admitted the allegations in the complaint. Based on the parents' admissions, the court adjudicated the children dependent and neglected.

{¶ 4} The juvenile court scheduled a dispositional hearing for Monday, August 23, 2021. The juvenile court arranged for Father to participate remotely in the hearing from prison, using the Zoom videoconferencing platform. However, on August 20, the Friday before the hearing, the prison notified the court that the prison would not permit Father to participate in the hearing "by Zoom or otherwise" because he was in a COVID-19 quarantine. Though Father was not present at the Monday hearing, counsel for Father was present. Before the hearing began, Father's counsel orally moved for a continuance so that Father could attend. Father's counsel represented that Father anticipated being released from

prison in about a month.[1]  The state opposed the continuance on the grounds that it would result in yet another dismissal and refiling of the complaints due to statutory time constraints for disposition.  The court denied Father's request for a continuance and proceeded with the dispositional hearing.  Mother consented to a grant of legal custody to the Lopers.  The children's caseworker was the only witness.  The juvenile court discussed with the Lopers their being designated legal custodians of the children.  The children's court-appointed special advocate ("CASA") had filed an updated report before the hearing and she told the court that she agreed with the Lopers being designated legal custodians.

{¶ 5}  On August 25, 2021, the trial court entered judgment designating the Lopers the legal custodians of the children.

{¶ 6}  Father appealed, bringing four assignments of error.

## II. Analysis

### A.  Due Process and Motion for Continuance

{¶ 7}  Father's Assignment of Error No. 1:

{¶ 8}  APPELLANT FATHER WAS DENIED DUE PROCESS WHEN THE COURT FAILED TO CONTINUE THE DISPOSITIONAL HEARING AND/OR SECURE HIS PRESENCE AND DID NOT ALLOW FOR TIME FOR FATHER TO DISCUSS THE CASA REPORT FILED THE DAY OF THE HEARING.

{¶ 9}  In his Assignment of Error No. 1, Father raises two separate—but related— legal issues.[2]  First, he argues that the juvenile court denied him procedural due process as

---

1. In its brief, the state says that the trial court noted at the hearing that "father would remain incarcerated for four (4) years so there was no possibility of the children being placed in his home."  We are unable to locate any portion of the record stating that Father would have remained incarcerated for four more years.

2. Father also argues that he was denied the opportunity to review the updated CASA report filed the morning of the dispositional hearing.  Because of the manner in which we resolve Assignment of Error No. 1, we do not need to address this argument.

guaranteed by the United States Constitution by conducting the dispositional hearing in his absence. He argues that if he had been permitted to participate in the hearing, he could have provided testimony concerning his contacts with the children, his housing plans upon being released from prison, and the prison programming that he had completed. In support of this argument, Father applies the procedural due process factors set forth by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893 (1976). Second, Father argues that the trial court abused its discretion by denying his motion for a continuance until he could participate.

{¶ 10} "Whether the court has complied with due process is a matter of law that we review de novo." *In re C.L.W.*, 12th Dist. Clermont No. CA2021-05-013, 2022-Ohio-1273, ¶ 48. *Accord In re G.B.*, 2d Dist. Montgomery No. 27992, 2019-Ohio-236, ¶ 22; *Trumbull Twp. Bd. of Trustees v. Rickard*, 11th Dist. Ashtabula Nos. 2016-A-0044 and 2016-A-0045, 2017-Ohio-8143, ¶ 60.

{¶ 11} "'"There is no support in the Constitution or in judicial precedent for the proposition that a prisoner has an absolute due process right to attend the trial of a civil action to which he is a party."'" *In re S.F.T.*, 12th Dist. Butler No. CA2010-02-043, 2010-Ohio-3706, ¶ 8, quoting *Abuhilwa v. Board*, 4th Dist. Pickaway No. 08CA3, 2008-Ohio-5326, ¶ 7, quoting *Mancino v. City of Lakewood*, 36 Ohio App.3d 219, 221 (8th Dist.1987). However, the lack of an absolute due process right to attend the trial of a civil action does not mean that there are no circumstances in which a prisoner may have the right to attend or otherwise contribute to such proceedings. To determine parental due process rights in custody proceedings, Ohio courts use the three-part test established by the U.S. Supreme Court in *Mathews*. *Id.* at ¶ 9. *See also In re P.J.*, 11th Dist. Ashtabula Nos. 2008-A-0047 and 2008-A-0053, 2009-Ohio-182, ¶ 46-54 (applying *Mathews* factors to determine if court

denied incarcerated parent due process when court denied parent's request to attend and present evidence by telephone). "The three factors considered in a *Mathews* analysis are (1) the private interest affected, (2) the risk of erroneous deprivation and the probable value of additional safeguards, and (3) the governmental burden of additional procedural requirements." *In re Sprague*, 113 Ohio App.3d 274, 276 (12th Dist.1996), citing *Mathews* at 335.

{¶ 12} As to the first *Mathews* factor—that is, the private interest affected—"[i]t is well recognized that the right to raise a child is an 'essential' and 'basic' civil right." *In re Hayes*, 79 Ohio St.3d 46, 48 (1997), citing *In re Murray*, 52 Ohio St.3d 155, 157 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972). A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982); *In re Murray* at 157.

{¶ 13} The state admits that Father's private interest at issue in this case is "significant," but suggests that this "significant" interest is less than would be at issue if this case involved *permanent* custody, rather than *legal* custody. The state is correct that a parent who loses permanent custody of a child loses all parental rights, while a parent who loses legal custody of a child loses only some parental rights and retains certain "residual rights." *In re K.G.*, 12th Dist. Clinton No. CA2020-11-017, 2021-Ohio-2154, ¶ 17 ("Unlike a grant of permanent custody, an award of legal custody does not terminate the parent-child relationship. * * * Rather, an award of legal custody merely vests in the custodian the physical care and control of the child while the residual parental rights and responsibilities remain intact with the child's parent[s]."). But we do not find this distinction significant for purposes of the first *Mathews* factor. The "residual rights" that a parent maintains after losing legal custody of a child include contact rights, visitation rights, a duty of support, and the ability to

petition for a custody modification in the future. *Id.* These "residual rights" are important, but they are also limited. When a parent loses legal custody of a child that parent loses significant rights related to a fundamental liberty interest. R.C. 2151.011(B)(21).[3] A parent who loses legal custody of a child cannot see his or her child every day, cannot determine the child's upbringing, education, discipline, or health, cannot speak to the child freely, and cannot engage in any number of other activities and decisions in which parents who have legal custody of their child can engage. R.C. 2151.011(B)(50).[4] Therefore, for purposes of the first *Mathews* factor, Father's private interest affected at the dispositional hearing was significant, even though this case involves legal custody, not permanent custody.

{¶ 14} The second *Mathews* factor examines the risk of an erroneous deprivation of Father's private interest by his absence at the dispositional hearing and the probable value of additional safeguards. Here, the state argues that there were procedural safeguards in place that protected against an erroneous deprivation. The state points out that counsel for Father was present at and participated in the hearing, which means that Father was represented throughout the proceedings. During the hearing, the state points out, Father's counsel cross-examined the sole witness and could have called witnesses on Father's behalf. Also, there was a stipulation that counsel could proffer Father's position in the case. While these procedural safeguards may have been sufficient to protect Father's procedural due process rights in different circumstances, they were insufficient given the facts in this

---

3. "'Legal custody' means a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities." R.C. 2151.011(B)(21).

4. "'Residual parental rights, privileges, and responsibilities' means those rights, privileges, and responsibilities remaining with the natural parent after the transfer of legal custody of the child, including, but not necessarily limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support." R.C. 2151.011(B)(50).

case. Father's counsel and the trial court learned that the prison would not allow Father to participate in the hearing "by Zoom or otherwise" *only one business day* before the hearing. Father and his counsel had a plan for the hearing that involved Father testifying by Zoom. The court arranged with the prison to facilitate this plan. But the prison, with only one business day's notice, unilaterally prevented Father and his counsel from carrying out their plan by announcing that it would not allow Father to attend the hearing by Zoom or otherwise. Practically speaking, less than one business day was not enough time for Father's counsel to have come up with a new plan for the hearing, called and arranged for new witnesses (who were not previously needed because Father had planned to testify), and prepared a stipulation or proffer about the testimony that Father would have provided, all without being permitted to have any contact with Father.

{¶ 15} In other words, because the prison authorities' decision not to allow Father to participate in the hearing "by Zoom or otherwise" was communicated only one business day before the hearing, there would have been no plausible way for Father's counsel to fully employ the safeguards that counsel could have used to prevent the erroneous deprivation of Father's parental rights.

{¶ 16} We conclude that the "procedural safeguards in place that protected against an erroneous deprivation" were, in this case, for the most part not realistically available to Father or his counsel. Therefore the "risk of erroneous deprivation" of Father's parental rights was high. Likewise, the "probable value of additional safeguards," such as a short continuance, would have been high, as such additional safeguards would have eliminated the chance that Father's parental rights would have been erroneously deprived.

{¶ 17} The third and final *Mathews* factor looks at the governmental burden of additional procedural requirements. The state argues that a delay in the hearing date to

accommodate Father would have required it to dismiss the complaints and refile them, and that further delay would not have been in the best interest of the children, who had been in the agency's temporary custody "for a lengthy period of time" and needed stability and an end to the uncertainty of temporary custody. We agree that further delay in the hearing date would not have been ideal, but the record does not support the state's argument that a brief continuance would have required the dismissal and refiling of the complaints.

{¶ 18} By law, a court must hold a dispositional hearing within 90 days of the filing of a complaint. R.C. 2151.35(B)(1). PCDJFS filed the relevant complaints on June 17, 2021, so when the juvenile court held the dispositional hearing on August 23, 2021, nearly one month remained until the September 15, 2021 deadline before which the state would have needed to dismiss the complaints if no dispositional hearing was held. The juvenile court stated at the hearing not only that it wished to avoid the dismissal of the complaints but also that it was "unclear" when Father would be available for a hearing, suggesting that there was no point in rescheduling the hearing. But it is common knowledge that COVID quarantines do not last a month or more. Based on the information in the record, there was no reason to believe that Father's quarantine status would have lasted much longer, or that it would have lasted so long that the court could not reschedule the dispositional hearing by September 15. Accordingly, there was sufficient time remaining for the court to reschedule the dispositional hearing, without the need to dismiss the complaints. Also, as the dispositional hearing could have been rescheduled within a month, the delay would not have significantly impacted the children. Therefore, we conclude that the governmental burden of additional procedural requirements in this matter was light.

{¶ 19} Again, the prison explained that it would not allow Father to participate in the hearing "by Zoom or otherwise" because the prison had placed Father in COVID quarantine.

But the mere fact an individual has been placed in "COVID quarantine" does not eliminate that individual's constitutional right to due process. After all, constitutional rights do not simply disappear each time the specter of COVID is raised. The juvenile court was still required to determine what process Father was due under the Constitution, and to provide Father with that due process.

{¶ 20} The juvenile court made statements at the dispositional hearing suggesting that Father was unlikely to retain legal custody of his children even if he had appeared at the dispositional hearing because he was an incarcerated criminal with little or no plan for how to care for himself and the children after his anticipated, quickly-approaching release from prison. We understand the significance of those comments. That said, we are first asked in this case not to address the merits of Father's arguments regarding custody, but regarding due process. Even if Father may face substantial hurdles with regard to the merits of his custody argument, the analysis of what process is due under the Constitution does not depend on the identity of the person seeking that process, or even on the strength or weakness of their arguments on the merits of the case.

{¶ 21} Here, the *Mathews* factors favor Father because the dispositional hearing involved the potential loss of legal custody of his children, a significant diminution in Father's parental rights; because the risk of erroneous deprivation of his parental rights associated with his non-appearance at the dispositional hearing and the probable value of additional safeguards were both high; and because the additional procedural requirements that may have been needed imposed little burden on the state. For these reasons, and based on the specific circumstances of this case, we conclude that the juvenile court denied Father due process when it proceeded with the dispositional hearing without his participation or

appearance by Zoom, telephone, or otherwise.[5]

{¶ 22} As for Father's second argument, we agree that the juvenile court also abused its discretion when it denied Father's request for a continuance. The requested continuance was "imperative to secure fair treatment for" Father under Juv.R. 23 and the court should have granted it.

{¶ 23} For these reasons, we sustain Assignment of Error No. 1.

## C. Remaining Assignments of Error

{¶ 24} Father's Assignment of Error No. 2:

{¶ 25} WHEREAS THE AGENCY DID NOT FILE A CASE PLAN NOR PROVIDE EVIDENCE OF REASONABLE EFFORTS, THE DECISION MUST BE REVERSED.

{¶ 26} Father's Assignment of Error No. 3:

{¶ 27} APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 28} Father's Assignment of Error No. 4:

{¶ 29} THE COURT ABUSED ITS DISCRETION IN ORDERING LEGAL CUSTODY AS IT WAS NOT WITHIN THE CHILDREN'S BEST INTEREST.

{¶ 30} Because we have sustained Father's Assignment of Error No. 1 and another hearing must be held, Assignments of Error Nos. 2, 3, and 4 are moot. We therefore dismiss those assignments of error.

## III. Conclusion

{¶ 31} The trial court's decision overruling Father's objection to proceeding with the

---

5. Note that this case is not about whether Father could attend the dispositional hearing in person. Father's counsel had worked with the court and the prison to arrange Father's attendance by Zoom. The prison initially agreed. There is nothing in the record to suggest that Zoom attendance presented an undue burden on the prison. The same is true regarding Father potentially attending by telephone. In fact, the record reflects that prison authorities allowed Father to appear by telephone from prison for at least one previous hearing in this case, and that prison authorities enabled Father to have twice-weekly telephone calls with his children while incarcerated.

dispositional hearing and seeking a continuance is reversed. This case is remanded for a new dispositional hearing at which Father may participate.

**{¶ 32}** Judgment reversed.

M. POWELL, P.J., and HENDRICKSON, J., concur.