[Cite as *In re A.S.*, 2023-Ohio-1607.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| A.S. | : | CASE NO. CA2022-11-074 |
| | : | O P I N I O N<br>5/15/2023 |
| | : | |
| | : | |
| | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 21-D000039

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Clouse Law Office, and Lauren L. Clouse, for appellant.

**PIPER, J.**

{¶1} Appellant, Dana Warrick ("Mother"), appeals the decision of the Warren County Common Pleas Court, Juvenile Division, granting legal custody of A.S. to the child's paternal aunt ("Aunt").[1] The child's biological father ("Father") did not appeal.

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar for purposes of issuing this opinion.

**Factual Background**

{¶2}  On April 27, 2021, Warren County Children Services ("WCCS") filed a complaint alleging A.S. was a neglected and dependent child.  The complaint alleged that WCCS received a referral regarding Mother's mental health and Father's drug use.  Mother had delusional thoughts reporting that A.S. was a psychic medium and a reincarnation of Princess Diana.  Mother believed that, in a prior life, she was Queen Elizabeth and that Father was Henry VIII or Jack the Ripper.

{¶3}  The complaint stated that A.S., who was nearly five years old, would not use the bathroom toilet, but would use either the floor or the bathtub.[2]  Previously, on April 22, 2021, law enforcement conducted a welfare check where they found Father passed out on the couch surrounded by pills and pill bottles.[3]  Father also admitted to using methamphetamines and reported blacking out often.

{¶4}  A.S. was removed from the home and placed in the emergency shelter care of WCCS with temporary custody awarded to Aunt and protective supervision to WCCS.  A.S. was later adjudicated as neglected and dependent.  The juvenile court issued dispositional orders continuing the temporary custody award.

{¶5}  A case plan was adopted requiring Father to continue mental health treatment and to complete a substance abuse assessment.  Father was also ordered to comply with requests for random drug screens.  Mother was not initially on the case plan because she was unable to be located.

{¶6}  Mother remained absent until late September or early October 2021 when she

---

2. A.S. was born in June 2016 and turned six years old by the time of the final hearing.

3. Father reported being prescribed Xanax, Lexapro, Gabapentin, and Benztropine.  During trial Father stated that he took more medications that he couldn't pronounce.  He also stated that he was taking methadone.  Father admitted that he did not take his medications as prescribed.  He further noted that "If I take a Xanax, watch out. * * * Xanax sets me off."

was added to the case plan. Mother was required to complete mental health and substance abuse assessments, comply with treatment recommendations, comply with random drug screens, establish and maintain housing and employment, and complete a psychological evaluation.

{¶7} On October 18, 2021, Aunt moved for legal custody of A.S. The juvenile court held the motion in abeyance for reasons not stated in the record. On March 22, 2022, WCCS moved for an order extending temporary custody to Aunt to allow Mother and Father additional time to work on their case plan services. WCCS noted that Mother still needed to engage in services for her mental health and Father needed to follow through with his substance abuse assessments. WCCS later withdrew the motion for extension due to lack of progress with case plan services.

**Legal Custody Trial**

{¶8} On July 12, 2022, the juvenile court held a hearing on Aunt's motion for legal custody. Mother and Father were both represented by separate counsel. Father appeared for the hearing while Mother did not. Mother's counsel informed the juvenile court that Mother was unavailable because she had a flat tire. The matter proceeded to trial during which the juvenile court heard testimony from Aunt, Father, and the WCCS caseworker.

{¶9} Aunt testified that A.S. has resided with her since the shelter care hearing and is well-adjusted to her home. Aunt resides in an appropriate residence near many family members and friends. A.S. and Aunt are bonded and A.S. has steadily improved since she began residing with Aunt. A.S. is now toilet trained, attends school, and has dropped certain aggressive and harmful behaviors. A.S. has thrived in the structured environment provided by Aunt.

{¶10} Aunt stated that she recently had to obtain a civil protection order ("CPO") against Father based upon certain aggressive behaviors directed towards her in the

presence of A.S. Father was recently incarcerated for violating that CPO. Furthermore, Aunt testified that Mother clearly neglected A.S., and that A.S. was not in a safe environment in Mother and Father's home. Despite having temporary custody of A.S., Aunt testified that she has had minimal contact with Mother since the beginning of the case. Mother had not seen A.S. for approximately one year. In addition, Aunt explained that she continues to have concerns with Mother's mental health. Aunt stated that Mother continues to make delusional statements and discusses her hallucinations on social media.

{¶11} Father testified and generally did not oppose legal custody in favor of Aunt. Father agreed that he was "guilty of neglect" and stated that he had "no problem" with Aunt "keeping [A.S.]." However, he stated that he wanted to see A.S. more. Father acknowledged his mental health struggles and discussed the "boatload" of prescriptions he was taking. He further acknowledged that Aunt had done a "wonderful" job with A.S.

{¶12} The caseworker testified about the case history and interactions she had throughout these proceedings. The agency had concerns about Father's mental health and drug use, and Mother's mental health. The caseworker testified that Mother was absent from the beginning of the case until Fall 2021. When she became minimally involved, Mother did not visit A.S. While Mother did eventually sit for a psychological examination, her own delays in obtaining that assessment meant that a full report could not be completed prior to the final hearing. Unlike the unsafe and neglectful conditions in Mother and Father's former home, the caseworker testified that Aunt's home is appropriate, A.S. and Aunt are bonded, and all of A.S.'s needs are being met. The caseworker stated that the agency supports a grant of legal custody in favor of Aunt.

{¶13} On July 28, 2022, the magistrate issued a written decision addressing each of the requisite best interest factors and found it was in A.S.'s best interest that she be placed in the legal custody of Aunt. Mother filed objections to the magistrate's decision,

which the juvenile court overruled. Mother timely appeals, raising a single assignment of error for review.

## Issue on Appeal

{¶14} THE TRIAL COURT ERRED IN FINDING BY A PREPONDERANCE OF THE EVIDENCE, THAT AN AWARD OF LEGAL CUSTODY TO PATERNAL AUNT WAS IN THE CHILD'S BEST INTEREST.[4]

{¶15} In her sole assignment of error, Mother argues the juvenile court erred by finding that an award of legal custody to Aunt was in A.S.'s best interest. Review of the record reveals that the juvenile court conducted a thorough analysis of the factors in granting legal custody. Mother essentially is challenging the juvenile court's weighing of the evidence.

## Legal Custody

{¶16} Unlike a grant of permanent custody, an award of legal custody does not terminate the parent-child relationship. *In re L.C.*, 12th Dist. Warren No. CA2019-08-086, 2020-Ohio-4629, ¶ 13; *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 7 ("granting legal custody does not terminate the parent-child relationship"). Rather, an award of legal custody merely vests in the custodian the physical care and control of the child while the residual parental rights and responsibilities remain intact with the child's parents. *In re A.B.*, 12th Dist. Brown No. CA2016-11-021, 2017-Ohio-5776, ¶ 10. This includes, for instance, "contact and visitation rights and a duty of support." *In re M.M.*, 12th Dist. Fayette No. CA2010-12-034, 2011-Ohio-3913, ¶ 7. This also includes the ability to petition the juvenile court for a custody modification in the future. *In re K.G.*, 12th Dist.

---

4. In the table of contents, Mother lists a different assignment of error relating to protective services that bears no resemblance to the facts and law involved in the present case. This is most likely an inadvertent mistake. We urge all counsel and those appearing before this court to review our local rules and proofread their filings. Local Rule 11(B)(3).

Clinton No. CA2020-11-017, 2021-Ohio-2154, ¶ 17. An award of legal custody, therefore, is not as drastic a remedy as a grant of permanent custody because such an award "does not divest parents of their residual parental rights, privileges, and responsibilities." *Id.*, citing *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, ¶ 17.

{¶17} R.C. 2151.353(A)(3) provides that if a child has been adjudicated abused, dependent, or neglected, a juvenile court may award legal custody of the child "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child." A juvenile court "may award legal custody to a nonparent upon a demonstration by a preponderance of the evidence that granting legal custody to the nonparent is in the child's best interest." *In re L.A.B.*, 12th Dist. Fayette No. CA2012-03-008, 2012-Ohio-5010, ¶ 12. "A preponderance of the evidence is evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it." *Id.*

{¶18} A juvenile court's custody determination under R.C. 2151.353 must be based on the best interests of the child. *In re K.B.*, 12th Dist. Butler No. CA2012-03-063, 2013-Ohio-858, ¶ 11. In determining the best interests of the child, the juvenile court must consider all relevant factors, including, but not limited to, the applicable factors set forth in R.C. 3109.04(F). *Id.*

**Standard of Review**

{¶19} This court reviews the juvenile court's custody determination for an abuse of discretion. *In re S.K.*, 12th Dist. Butler No. CA2013-06-108, 2014-Ohio-563, ¶ 12. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The discretion that a juvenile court enjoys in custody matters "'should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the

- 6 -

lives of the parties concerned.'" *In re J.M.*, 12th Dist. Warren No. CA2008-12-148, 2009-Ohio-4824, ¶ 17, quoting *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988).

**{¶20}** Moreover, a challenge to the manifest weight of the evidence involves the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12. In a manifest weight challenge "the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re A.F.*, 12th Dist. Butler No. CA2019-01-005, 2019-Ohio-4627, ¶ 20.

**Analysis**

**{¶21}** On appeal, Mother argues that granting legal custody to Aunt was not in A.S.'s best interest. Mother argues that she made "substantial progress on [her] case plan" and cites various best interest factors in R.C. 2151.414(D) and 3109.04(F) that she claims were in her favor. She states that she completed mental health and substance abuse assessments, obtained independent housing, has full-time employment, and has sat for a psychological evaluation.[5]

**{¶22}** However, while Mother may weigh the best interest factors differently, we find the juvenile court's decision finding it was in A.S.'s best interest to grant legal custody to Aunt was not an abuse of discretion. A.S. was removed from the care of her parents and adjudicated neglected and dependent in large part because of her parents' substance abuse and mental health issues. The record reflects that Mother had delusional thoughts.

---

5. Mother also makes certain assertions without much elaboration. For example, she states that "factor (c) and the custodial history of the child" favors Mother because A.S. "spent five years in Mother's home." Yet, she apparently fails to appreciate that A.S. was *removed* from that home due to severe neglect.

When WCCS spoke to Mother, she reported that A.S. was Princess Diana reincarnated and that she and Father were various other reincarnations. Mother also informed WCCS that A.S. would not use the toilet because "something tickles them when they use the toilet," so instead A.S. went to the bathroom on the floor or in the bathtub. Father stated that he continued to have substantial concerns regarding Mother's mental health. Father indicated that he had to call the police on Mother "a dozen times" in the past.

{¶23} When A.S. was removed in April 2021, Mother had no contact with the agency until late September or early October 2021. When she was later added to the case plan, Mother was required to complete mental and substance abuse assessments, comply with treatment recommendations, comply with random drug screens, establish and maintain housing and employment, sign all necessary releases, and complete a psychological evaluation.

{¶24} Mother completed *some* of her case plan services. She was employed at a hotel chain, obtained housing, and submitted to random drug screens.[6] Mother also attended a psychological evaluation, however, the results were not available at the time of trial because of Mother's own delays in completing the evaluation. While Mother completed some of her case plan, that does not mean that the juvenile court's decision awarding legal custody to Aunt was an abuse of discretion. It is well established that even the successful completion of a case plan is not determinative of reunification. *In re K.G.*, 12th Dist. Clermont Nos. CA2020-08-047 thru CA2020-08-049, 2021-Ohio-1182, ¶ 53.

{¶25} Rather, the primary concern is whether the parent has substantially remedied the concerns that caused the child's removal from the parent's custody. *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 24. While successful completion of

---

6. The caseworker testified that Mother tested positive for marijuana. Furthermore, although Mother obtained independent housing, she had only done so just prior to the final hearing.

the case plan may certainly be a relevant factor for the juvenile court to consider, "the case plan is simply a means to a goal, but not the goal itself." *In re A.R.*, 12th Dist. Butler No. CA2015-08-143, 2016-Ohio-4919 at ¶ 18.

{¶26} Here, Mother has continued to struggle with her mental health throughout these proceedings. She has failed to adequately address her mental health struggles and has consistently denied mental health services. Although Mother completed a mental health assessment, she chose not to engage in recommended mental health counseling because she "didn't feel as though she needed it." The caseworker testified that Mother was adamant that she would not go to counseling. Father echoed the same concerns with Mother's mental health stating that he "would not put [A.S.] around [Mother], in the condition she's in." A further concern was Mother's complete absence from A.S.'s life since removal.

{¶27} To the contrary, A.S. has continuously resided with Aunt since her removal, which placement has been beneficial for the child. During this time, A.S. has developed a strong and lasting bond with Aunt who has provided stability and continuity in her life. While Mother argues differently, the record readily supports the juvenile court's decision finding it was in A.S.'s best interest to award legal custody to Aunt. Therefore, we find Mother's sole assignment of error challenging the juvenile court's decision to award legal custody of A.S. to Aunt lacks merit and is overruled.

{¶28} Judgment affirmed.

HENDRICKSON, P.J., and BYRNE, J., concur.