[Cite as *In re C.L.*, 2024-Ohio-616.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

IN RE:                             :

      C.L., et al.                 :

                             :

                             :

                             :

CASE NO. CA2023-03-004

O P I N I O N
2/20/2024

APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. 20213059; 20213060

Ryan Agee, for appellant.

Martin P. Votel, Preble County Prosecuting Attorney, and Sean Brinkman, Assistant Prosecuting Attorney, for appellee.

**BYRNE, J.**

{¶1}    The biological father ("Father") of C.L. and R.L ("the children") appeals from decisions of the Preble County Court of Common Pleas, Juvenile Division, which granted legal custody of the children to their maternal grandparents. For the reasons that follow, we affirm.

## I. Factual and Procedural Background

{¶2}    In 2019, Preble County Job and Family Services, Children Services Division ("the Agency") filed complaints alleging that the children were neglected and dependent. These complaints sought removal of the children and temporary custody.  The Agency's basis for seeking the children's removal was because Father had been sentenced to a term of incarceration and the children's mother ("Mother") was using methamphetamine and not providing for the children's basic needs.  In December 2019, the juvenile court placed the children in the Agency's temporary custody.  A year later, in December 2020, the children were placed with their maternal grandparents, with whom they have remained since that time.

{¶3}    In June 2021, the original 2019 complaints were dismissed due to statutory time constraints, and the Agency filed new complaints, again alleging neglect and dependency.  At the time, the children were ages seven and eight.  The new complaints asked the court to grant the grandparents legal custody of the children or, alternatively, to grant the grandparents temporary custody.  In early July 2021, the court granted temporary custody of the children to the grandparents.

{¶4}    The juvenile court held an adjudication hearing on the 2021 complaints later that month.  Mother appeared pro se and admitted the allegations in the complaint. Father, who was in prison for drug possession and tampering with evidence, did not personally attend the hearing but was represented by counsel.  Father's attorney, with Father's permission, also admitted the allegations in the complaint.  Based on the parents' admissions, the court adjudicated the children neglected and dependent.

{¶5}    The juvenile court scheduled a dispositional hearing in August 2021 to address the Agency's request to grant legal custody of the children to the grandparents. The juvenile court arranged for Father, who remained incarcerated, to attend the hearing

- 2 -

via video-conferencing technology. However, the prison notified the court shortly before the hearing that Father was quarantined with COVID-19 and would not be permitted to attend the hearing, even remotely.

{¶6} At the dispositional hearing, Father's attorney orally moved the court to continue the hearing to permit Father to attend. The court denied Father's motion and proceeded to hold the dispositional hearing. Ultimately, the court found that it was in the children's best interest to be placed in the legal custody of the grandparents.

{¶7} Father appealed that decision to this court. On appeal, Father argued that the juvenile court denied him due process of law by not continuing the dispositional hearing. We agreed and found that the juvenile court denied Father due process when it proceeded with the dispositional hearing without his participation or appearance by video conferencing telephone, or otherwise. *In re C.L.*, 12th Dist. Preble No. CA2021-09-008, 2022-Ohio-3596, ¶ 21. We reversed the juvenile court's decision and remanded for a new dispositional hearing. *Id*.

### A. The Dispositional Hearing

{¶8} The juvenile court held the new dispositional hearing in February 2023. The following is a summary of the key testimony presented at that hearing.

### 1. Agency's Case – Jalisa Tackett's Testimony

{¶9} Jalisa Tackett testified that she was employed by the Agency and was the agency worker assigned to the children's cases. Father was incarcerated when the Agency first received temporary custody of the children. Father was released from incarceration in September 2021.

{¶10} Tackett explained that Father was on a case plan with the Agency with the goal of reunifying with his children. His case plan requirements were to complete drug and alcohol treatment, to complete a mental health assessment, and to follow all

- 3 -

recommendations of those services. Father was also required to attend parenting classes.

{¶11} Tackett testified that Father had not reported engaging in any drug and alcohol treatment. Father had also not reported engaging in any mental health services. The Agency also had no documentation from Father's prison regarding any drug and alcohol treatment or mental health services. The Agency had no information from Father as to whether he completed parenting classes.

{¶12} Tackett reported that Father was currently living at his sister's home in Ansonia, Ohio. She understood that he was looking for an apartment or other housing for himself and the children. Father was employed but was currently not working while he was recovering from injuries sustained in a recent car accident. Father had no driver's license.

{¶13} Tackett understood that Father was visiting the children one or two times per month. Those visits lasted approximately eight hours at a time and were monitored by a grandparent. No inappropriate behavior was reported. Father had not had any overnight visits.

{¶14} The Agency had concerns with the appropriateness of placing the children with Father at his sister's home. This was due to an "indicated" (as opposed to "substantiated") case where his sister was found to have been giving unprescribed Adderall to underage children. "Indicated" meant that the allegation had been proven but children services had determined the children were not at future risk. "Substantiated" meant that the children would be at future risk and would require agency involvement. The Agency was also concerned with Father's failure to complete any case plan services.

{¶15} Tackett testified that the grandparents were meeting the children's needs. The children told her that they were enjoying living with the grandparents. Ultimately, the

Agency was requesting that the juvenile court grant legal custody to the grandparents.

## 2. Father's Testimony

{¶16} Father testified that he was working at a Taco Bell, though he was currently off work recovering from injuries suffered in a car accident. He planned to return to work later that month.

{¶17} Father stated he received a monthly payment from social security disability that, after deductions for child support and insurance, left him with approximately $700 in monthly income. Father agreed that his disability payment was not enough for him to live on, which was why he worked at Taco Bell.

{¶18} As to his compliance with the case plan, Father stated that he participated in drug and alcohol treatment while incarcerated. He claimed to have three certificates from this drug and alcohol program. He admitted that he did not provide the certificates to the Agency and explained that he did not do so because "I was never asked to."

{¶19} Father also stated that he engaged in mental health services while in prison. And he stated that he had taken parenting classes prior to going to prison. Father stated that he never shared this information with the Agency because, "[i]t was never asked of me."

{¶20} Father testified that his sister had never been convicted of a crime and had never had a child removed from her care. As to her home, Father stated that there were five individuals living there, including himself. The individuals were Father, Father's sister, the sister's fiancé, and two children.

{¶21} There were three bedrooms in the home. His sister and her fiancé slept in one bedroom. The two children each had their own bedroom. Father slept in the living room.

{¶22} As to where his children would sleep at the home, Father stated that "[t]hey

would make accommodations" for the two children and indicated his sister's older child might move out of the home. Father stressed that this was a temporary situation because he was looking for his own apartment.

{¶23} As to why he believed it was in the children's best interest for him to regain custody, Father stated, "[b]ecause I'm their father and I know what's in their best interest."

{¶24} On cross-examination and also under questioning by the court, Father stated that the last time he had lived with the children was in October 2019, immediately prior to going to prison. As to the parenting class he took before his incarceration, he clarified that this was a "co-parenting" class he took when he and his wife were contemplating a divorce.

{¶25} Father claimed that he had been sober since 2014. However, Father also admitted that he was convicted of possession of drugs in 2019.

{¶26} Father conceded that he had no driver's license. But he stated he had a vehicle and had people who could drive him around until he obtains a driver's license.

### 3. Mother's Participation at the Hearing

{¶27} The children's biological mother informed the court that she would prefer that the children remain with the grandparents, and that she also wanted the children to have visits with Father.[1] Mother also stated that she had concerns about uprooting the children from their current arrangement with their grandparents and that she believed the younger of the two children would have trouble adjusting to a new custody situation.

### B. The Juvenile Court's Decisions

{¶28} The juvenile court found that Father had completed none of the objectives in his case plan. The court stated that it was very concerned with the prospect of removing

---

1. Mother did not separately appeal the juvenile court's decisions and has not participated in this appeal.

the children from their stable home with the grandparents and placing them with Father. The court noted that the children had been living with the grandparents for over two years due to Mother and Father's actions or inactions.

{¶29} The court found that Father's current living situation was not ideal, and questioned whether there was truly room for the children in Father's sister's home.

{¶30} The court observed that Father had no driver's license and was working part time. He had a history of drug use and no evidence of having completed any drug abuse assessment, let alone any drug abuse treatment. Additionally, Father had not utilized any mental health or parenting services.

{¶31} The court observed that Father meant well and noted that he had a positive relationship with his children. The court commented that if Father made positive strides in the future, the court believed that he could file to regain custody. However, any request by Father to regain custody was premature at that time.

{¶32} The court found that the children were connected to the grandparents' community and were not connected to Father's community. The court found it was unclear if the children had any relationship with the paternal aunt and her family. Ultimately, the court found that it was in the children's best interest to be placed in the legal custody of the grandparents.

{¶33} Father has appealed, raising two assignments of error.

**II. Law and Analysis**

**A. Ineffective Assistance of Counsel**

{¶34} Father's first assignment of error states:

THE COURT DENIED FATHER DUE PROCESS AND HIS 6TH AMENDMENT RIGHT TO COUNSEL BY APPOINTING THE SAME ATTORNEY FOR HIS DISPOSITIONAL HEARING AFTER HE REQUESTED NEW COUNSEL.

{¶35} Father makes two arguments within this assignment of error. First, he states that the court violated his due process rights under the Sixth Amendment to the United States Constitution by appointing an attorney to represent him at the dispositional hearing even though he had objected to that attorney representing him. Second, he argues that the attorney provided him with ineffective assistance of counsel at the dispositional hearing.

### 1. Objection to Appointed Attorney

{¶36} Father states that he objected to the appointment of the attorney who represented him at the dispositional hearing but that the juvenile court appointed that attorney notwithstanding his objection. Father does not cite any portion of the record where he objected to his appointed attorney prior to the dispositional hearing. The state contends that there is nothing in the record reflecting that Father objected to his appointed attorney between the October 2022 entry appointing his attorney and the dispositional hearing. We also found no objection by Father to his appointed attorney in this portion of the record.

{¶37} Regardless, even if we assumed that Father had objected to the appointment of his attorney, an indigent party does not have a right to the counsel of his or her own choosing. *See State v. Blankenship*, 102 Ohio App.3d 534, 558 (12th Dist.1995), citing *Thurston v. Maxwell*, 3 Ohio St.2d 92, 93 (1965). Accordingly, this argument is meritless.

### 2. Ineffective Assistance of Counsel

{¶38} Next, Father contends that his attorney provided ineffective assistance by "failing to object or call witnesses in this case." Father argues that by failing to object or call witnesses, his attorney "may have neglected to provide critical evidence or arguments that could have potentially changed the outcome of the case" in his favor. Father also

argues that his attorney was deficient for failing to "engage in meaningful communication" with him.

{¶39} Father is entitled to effective assistance of counsel in legal custody proceedings. *Matter of Coffey*, 12th Dist. Madison No. CA97-05-021, 1998 WL 24341, *3 (Jan. 26, 1998). The test used to determine whether a parent has been denied effective assistance of counsel is that set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). *Id*.

{¶40} To prevail on an ineffective assistance of counsel claim, Father must establish "(1) deficient performance by counsel, that is, performance falling below an objective standard of reasonable representation, and (2) prejudice, that is, a reasonable probability that but for counsel's errors, the result of the proceedings would have been different." *State v. Taylor*, 12th Dist. Fayette No. CA2018-11-021, 2019-Ohio-3437, ¶ 16, citing *Strickland* at 687-688, 694 and *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 62. The failure to demonstrate either prong is fatal to an ineffective assistance of counsel claim. *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 54. In considering an ineffective assistance claim, an "appellate court must give wide deference to the strategic and tactical choices made by trial counsel in determining whether counsel's performance was constitutionally ineffective." *State v. McLaughlin*, 12th Dist. Clinton No. CA2019-02-002, 2020-Ohio-969, ¶ 54.

{¶41} Father argues that his attorney provided defective performance by "[n]eglecting to object or call witnesses." However, Father does not specify what testimony his attorney should have objected to during the dispositional hearing. Nor does Father articulate what witnesses an effective attorney would have called to testify. It is not the duty of this court to search the record for evidence to support Father's argument. *State v. Carpenter*, 12th Dist. Clinton No. CA2022-02-005, 2023-Ohio-2523, ¶ 82.

{¶42} Regardless, the decision to object or not to object, and the decision of which witnesses to call to the stand is a matter of a trial strategy and is within the ambit of professional legal assistance. *See State v. Boeddeker,* 12th Dist. Clermont No. CA2009-05-029, 2010-Ohio-106, ¶ 18. Father has not demonstrated that his attorney provided deficient performance based on the generic argument of "[n]eglecting to object or call witnesses."

{¶43} Father also argues that his attorney was ineffective for failing to engage him in "meaningful communication." Father does not cite the portion of the record that supports this claim.

{¶44} Father attached to his brief a copy of a handwritten letter that he filed with the clerk of courts shortly after the juvenile court's dispositional decision and before the filing of the notice of appeal. In it, he requested a new attorney to file an appeal and stated that he received "poor representation in between hearings my lawyer had never made contact with me nor has she returned my calls." He went on to state that his attorney failed to adequately represent him and that "things was proven that was not proven." However, Father did not clarify what "things" were not proven. He stated he had messages between himself and the "CPS [w]orke[r]" but did not explain the import of those messages. Finally, he stated he believed that the court issued a biased decision "based on previous supreme court [rulings.]"

{¶45} Assuming Father's attorney did not contact him or return his calls, Father does not articulate what he was attempting to communicate with counsel or what communication should have occurred. Father's other statements in the letter do not shine any further light on this issue. Father had the opportunity to testify at the dispositional hearing that he was unable to prepare for the hearing due to a lack of communication by his attorney, but he did not do so. On this record, we cannot find that Father has

demonstrated deficient performance by his attorney.

{¶46} We also find that Father has not established the second prong of *Strickland*—that is, prejudice, or a changed outcome. As stated above, Father failed to specify what testimony his attorney should have objected to, what witnesses should have appeared on his behalf at trial, and what communication should have occurred with his appointed attorney. Based on the lack of any evidence in the record supporting these claims, it would be entirely speculative for this court to find that the outcome of the proceedings would have changed. *Newbauer v. Bertrand*, 12th Dist. Clermont No. CA2002-09-074, 2003-Ohio-5109, ¶ 25 (overruling an argument that an attorney was ineffective for failing to introduce documentary evidence where the record did not contain the evidence, based on its "purely speculative" nature).

{¶47} Father's first assignment of error is meritless and is overruled.

### B. Legal Custody Decision

{¶48} Father's second assignment of error states:

> THE COURT ABUSED ITS DISCRETION IN ORDERING LEGAL CUSTODY AS IT WAS NOT WITHIN THE CHILDREN'S BEST INTEREST.

{¶49} Father argues that the court abused its discretion in granting legal custody to the grandparents. Father argues that the court ignored that he completed his case plan requirements, had "regular" contact with his children after his release from prison, and that he was living with his sister, "who had space for his children in her home."

### 1. Applicable Law: Legal Custody and Best Interest Factors

{¶50} Pursuant to R.C. 2151.353(A)(3), if a child is adjudicated an abused, neglected, or dependent child, the juvenile court may award legal custody of a child "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child * * *." Legal custody may be awarded to a nonparent

upon a demonstration by a preponderance of the evidence that granting legal custody to the nonparent is in the child's best interest. *In re L.C.*, 12th Dist. Warren No. CA2019-08-086, 2020-Ohio-4629, ¶ 14. A preponderance of the evidence is evidence that is of a greater weight or more convincing than the evidence which is in opposition to it. *In re K.M.*, 12th Dist. Butler No. CA2019-01-015, 2019-Ohio-1833, ¶ 37.

{¶51} R.C. 2151.353(A) does not independently set forth factors that a court must consider in determining the child's best interests in a request for legal custody. *In re F.B.*, 12th Dist. Brown No. CA2021-03-002, 2022-Ohio-499, ¶ 43. "In determining the best interests of the child, the juvenile court must consider all relevant factors * * *." *In re A.M.W.*, 12th Dist. Butler No. CA2021-12-159, 2022-Ohio-2913, ¶ 18. Such factors include but are not limited to (1) the wishes of the child's parents regarding the child's care; (2) the wishes and concerns of the child, as expressed to the juvenile court; (3) the child's interaction and interrelationships with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (4) the child's adjustment to home, school, and community; and (5) the mental and physical health of all persons involved. R.C. 3109.04(F)(1)(a) through (e). *Accord In re L.C.* at ¶ 15.

{¶52} As the paramount concern is the best interest of the child, the court "should consider the totality of the circumstances affecting the best interest of the child." *In re S.L.*, 12th Dist. Butler Nos. CA2012-07-137 thru CA2012-07-142 and CA2012-07-147 thru CA2012-07-149, 2013-Ohio-781, ¶ 54.

### 2. Standard of Review

{¶53} The juvenile court enjoys broad discretion in custody proceedings. *In re L.W.*, 12th Dist. Preble No. CA2020-12-019, 2021-Ohio-2461, ¶ 31. As a result, "[t]his court reviews the juvenile court's custody determination for an abuse of discretion." *In re A.S.*, 12th Dist. Warren No. CA2022-11-074, 2023-Ohio-1607, ¶ 19, citing *In re S.K.*, 12th

Dist. Butler No. CA2013-06-108, 2014-Ohio-563, ¶ 12. "An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable." *In re A.S.* at ¶ 19, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The discretion that a juvenile court enjoys in custody matters "'should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" *In re J.M.*, 12th Dist. Warren No. CA2008-12-148, 2009-Ohio-4824, ¶ 17, quoting *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). A reviewing court must not substitute its judgment for that of the juvenile court when applying the abuse of discretion standard. *In re J.W.*, 12th Dist. Butler No. CA2019-07-108, 2020-Ohio-322, ¶ 23.

### 3. Analysis

{¶54} Upon review of the record, we do not find that Father has demonstrated that the juvenile court abused its discretion by determining it was in the children's best interest to grant legal custody to their grandparents. The record reflects that as of the date of the dispositional hearing, the children had been living with their grandparents for over two years. The grandparents were providing for the children's basic needs and the children enjoyed living with their grandparents.

{¶55} Father did not see the children during his period of incarceration between 2019 and 2021. Father was released from incarceration in September 2021 and the relevant dispositional hearing occurred in February 2023, or approximately 17 months after his release. During that time, Father inexplicably failed to complete any aspect of his case plan.

{¶56} Father argues that the court ignored that he in fact completed his case plan requirements of drug and alcohol treatment, a mental health assessment, and parenting classes. However, Father's assertion that he completed drug and alcohol treatment and

a mental health assessment was based solely on his testimony that he completed these services in prison. He provided neither the court nor the Agency with any documentary evidence to support these assertions, despite claiming to have "certificates" showing his completion. The court specifically noted that Father had a drug history, and yet had shown no evidence of drug treatment.

{¶57} Father also stated that he completed the parenting class requirement of his case plan, but this was a disingenuous claim. Father later clarified that this parenting class occurred prior to the children's removal and was for "co-parenting" when Father was contemplating a divorce. Father's testimony regarding allegedly completing his case plan requirements was not credible.

{¶58} After his release from incarceration, Father saw the children in visits that were monitored by the grandparents. Those visits went well. However, Father only visited with the children once or twice a month. Father claimed that these occasional visits were all his schedule could afford him. But Father also admitted that, more recently, he had not been working and his only other obligation was a one-hour a day, twice a week physical therapy session. Father's testimony on this subject was not credible.

{¶59} Father did not demonstrate that he had an appropriate and stable housing situation prepared for the children. He was living with his sister and three other people in a home with three bedrooms, all of which were occupied. Father himself was sleeping in the living room. Father vaguely discussed making "accommodations" for his two children. But as found by the juvenile court, it did not appear realistic that there was room for the children. Father claimed to be searching for an apartment, but he offered no other evidence to suggest that he would be moving out of his sister's home and into new, appropriate housing any time soon.

{¶60} In sum, by the time of the relevant disposition hearing, Father had been out

of prison for approximately 17 months yet during that time he failed to take any meaningful steps towards completing his agency case plan or acquiring suitable housing. Father's lackadaisical attitude towards reunifying is underscored by his testimony that he did not provide the agency with verification of his progress on the case plan because "I was never asked to." It appears, unfortunately, that Father was satisfied with the status quo of the grandparents caring for the children while he made occasional visits.

**{¶61}** Under these circumstances, we do not find that the juvenile court abused its discretion in granting legal custody of the children to their grandparents. The children deserve a level of permanency and stability in their life, and the juvenile court's decision affords them that stability. The record reflects that the juvenile court's decision was in the children's best interest under the totality of the circumstances. *In re S.L.*, 2013-Ohio-781 at ¶ 54.[2]

**{¶62}** We also note that this case involves a grant of legal custody, not a grant of permanent custody. "Unlike a grant of permanent custody, an award of legal custody does not terminate the parent-child relationship." *In re A.M.W.*, 2022-Ohio-2913 at ¶ 16. Though legal custody of the children has been granted to the grandparents, Father retains his residual parental rights and responsibilities, and this includes visitation rights and a duty of support. *Id.* There was testimony that the grandparents permitted Father to visit with the children so long as both their schedules allowed it and there is nothing in the record to suggest that visitation would be limited in the future.

---

2. Father argued that the juvenile court abused its discretion in granting legal custody and presented no argument referring to the manifest weight of the evidence in the body of his second assignment of error. In the conclusion section of his brief, Father requested that we remand this matter to the juvenile court "consistent with a ruling that said decision runs counter to the manifest weight of the evidence." However, in the same conclusion, Father referred to the juvenile court's decision to grant "*permanent* custody to the *Agency*," rather than *legal* custody to the *grandparents*, which is the issue in this appeal. This error leads us to believe that the language used here was boilerplate and Father did not intend to present a manifest weight argument. Regardless, Father did not raise a manifest weight of the evidence challenge within his assignment of error and we therefore do not address the manifest weight of the evidence. See App.R. 12(A)(2) and 16(A)(7).

{¶63}  In any event, the grant of legal custody to grandparents was not as drastic of a remedy as a grant of permanent custody and Father can continue to work towards reunification.  As the juvenile court noted, if Father decides he is ready to make progress on reunifying, he may apply for custody of the children in the future.  We of course express no opinion at this time on whether that may be appropriate when and if he makes such a request.

### III. Conclusion

{¶64}  For the foregoing reasons we overrule both of Father's assignments of error.

{¶65}  Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.